BARRON, Circuit Judge, with whom TORRUELLA, Circuit Judge, joins, concurring. The parties ask us to decide—one way or the other—whether a monopolist may be held liable under antitrust law for filing a series of petitions against a competitor (whether in a court or in an administrative proceeding) when no single one of those filings is baseless.[3] An unequivocal “no” would close off the so-called “sham” exception to Noerr-Pennington immunity in such a case. And, in doing so, such an answer would afford litigious monopolists a potentially significant safe harbor from antitrust liability. In particular, it would protect even a monopolist that used a barrage of filings to make an upstart’s own attempt to petition for an operating license so costly that the upstart must give up its attempt to compete for market share. But, in affirming the grant of summary judgment in the defendant’s favor, we do not establish such a limit on the scope of the sham exception. We avoid doing so because we do not hold that the “objectively baseless” requirement for triggering the sham exception set forth in the single-petition case of Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), necessarily applies to each and every case involving a pattern of petitioning. We instead rely on a more record-based, case-specific line of reasoning that, as I read our opinion, leaves open the possibility that, PREI notwithstanding, a monopolist might be liable under the antitrust laws for engaging in a pattern of petitioning, even though no single filing in that pattern is objectively baseless. I agree with this prudent approach. I write separately, however, to say more about the particular type of pattern petitioning case to which I have alluded, for it is not expressly mentioned in our opinion and bears some resemblance to the case at hand. I. The Sherman Act seeks to “preserv[e] free and unfettered competition as the rule of trade.” N. Pac. Ry. Co. v. United States, 356 U.S. 1, 4, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958). To further that aim, Congress used broad terms in the Act “in order to prevent creative monopolists from escaping liability by adopting ever new forms of combinations or anticompetitive conduct.” 2 Julian 0. von Kalinowski et al., Antitrust Laws and Trade Regulation § 25.01 (2d ed. 2017). In response, the federal courts have adopted a “common-law approach” in construing the limits that the antitrust laws place on the efforts of market incumbents to leverage their power to unfairly restrict competition. Leegin Creative Leather Products, Inc. v. PSKS, Inc., 551 U.S. 877, 899, 127 S.Ct. 2705, 168 L.Ed.2d 623 (2007). Courts thus generally analyze restraint-of-trade claims according to the “rule of reason,” which in operation is hardly a rule at all, and instead requires the “finder of fact [to] decide whether the questioned practice imposes an unreasonable restraint.on competition, taking into account a variety of factors.” State Oil Co. v. Khan, 522 U.S. 3, 10, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997). And, likewise, courts apply what amounts tó a quite similar “‘common law[5] against monopolizing.” Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263, 272 (2d Cir. 1979). At the same time, market participants, including monopolists, enjoy a broad right to petition their government., under the First Amendment. See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 138, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). This right protects not only lobbying the legislature but also litigating in court and participating in administrative proceedings. See California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Recognizing that courts “cannot ... lightly impute to Congress an intent -to invade these freedoms,” Noerr, 365 U.S. at 138, 81 S.Ct. 523, the Supreme Court established the Noerr-Pennington doctrine. See United Mine Workers of America v. Pennington, 381 U.S. 657, 669, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); Noerr, 365 U.S. at 136, 81 S.Ct. 523. That doctrine generally makes petitioning activity immune from antitrust liability, subject, however, to the important exception that immunity is not available to petitioning, activity that is just a “sham” for impermissible anti-Competitive conduct. Noerr, 365 U.S. at 144, 81 S.Ct. 523. Courts thus necessarily confront the following difficulty in defining the scope of the sham exception. A decision’ to immunize monopolists from antitrust liability for their filings—by narrowly construing the exception’s scope—surely protects the First Amendment right of petition. But, such a decision also may provide unnecessarily broad protection and thereby unduly impede the “free and unfettered competition”, that Congress wished to foster when it broadly empowered courts to hold monopolists accountable for their anti-competitive schemes. N. Pac. Ry. Co., 356 U.S. at 4, 78 S.Ct. 514. To navigate this difficulty, it is important not to view the sham exception as a rigid rule, Rather, we should construe that exception-r-just as we construe the antitrust laws generally—in accord with a rule of reason. I am therefore reluctant to conclude -that the “objectively baseless” requirement set forth in PREI, which involved a single filing in a particular con-, text, necessarily governs every type of case involving the filing of a series of petitions. Heightened antitrust concerns might arise in particular pattern cases that'would warrant an approach that is more sensitive to circumstance, so as to provide greater protection of competition from monopolistic schemes. Nor is it clear to me that such a common-law like approach to defining shams.would invariably trench on First Amendment rights. After all, the tort of abuse of process is itself sensitive to circumstance, but, presumably, the First Amendment is not infringed just because the tort imposes liability on some suits that have some merit. See, e.g., Poduska v. Ward, 895 F.2d 854, 857 (1st Cir. 1990); Restatement (Second) of Torts § 682 cmt. a (Am. Law Inst. 1977). , I also am not convinced that precedent forecloses this more context-sensitive approach to pattern cases. I note that PREI concerned an attempt to apply the sham exception to the filing of a single copyright infringement suit, 508 U.S. at 52, 113 S.Ct. 1920, and thus did not directly address whether a pattern of filings outside that context might raise distinct concerns. And while the Court did speak broadly in setting forth the “objectively baseless” requirement in that case, id. at 60-66, 113 S.Ct. 1920, three concurring Justices did not appear to read that decision to set forth a holding that imposed the baseless requirement to pattern cases. See id. at 66, 113 S.Ct. 1920 (Souter, J., concurring); Id. at 67, 113 S.Ct. 1920 (Stevens, J., concurring). Nor have we or any other circuit held that PREI automatically imposes its “objectively baseless” requirement in each and every pattern case. In fact, the.four circuits to have addressed the issue generally apply a “holistic” analysis that broadly considers a variety of factors in pattern cases to determine whether what is claimed to have been the exercise of the right of petition was really just a sham for concealing anticompetitive conduct. See Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc., 806 F.3d 162, 180-81 (3d Cir. 2015); Waugh Chapel South, LLC v. United Food & Commercial Workers Union Local 27, 728 F.3d 354, 363-64 (4th Cir. 2013); see also Primetime 24 Joint Venture v. Nat’l Broad. Co., 219 F.3d 92, 101 (2d Cir. 2000); USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-CIO, 31 F.3d 800, 810-11 (9th Cir. 1994). Finally, PREI did not purport to overrule California ■ Motor, which rejected the dismissal of an antitrust complaint that challenged a pattern of petitioning as a sham without alleging that any. of the defendants’ underlying filings was baseless. The Court held that the case could proceed to trial, 404 U.S. at 516, 92 S.Ct. 609, even though the .complaint alleged merely that the defendants had publicly announced and then implemented a policy of opposing “with or without probable cause, and regardless of the'merits” any of the plaintiffs’ applications for licenses that the plaintiffs needed in order to enter the market at all. Id. at 512, 92 S.Ct. 609. II. Assuming, then, that PREI’s “objectively baseless” requirement does not necessarily control the outcome of this case, there is still the question whether PRTC has provided enough evidence of sham petitioning to. survive OneLink’s motion for summary judgment. PRTC’s case does not much resemble either type of pattern case involving only non-baseless filings that our opinion expressly identifies as ones that might survive PREI. See Ct. Op. at 772. But, PRTC does contend that its allegations are close enough to those involved in California Motor to warrant application of the sham exception, and that argument merits further consideration. PRTC’s case is not on all fours with California Motor in that PRTC does not allege that OneLink made a public threat to make baseless filings like the antitrust defendant in California Motor allegedly did. But, I am not convinced that the scope of the sham exception described in California Motor is necessarily limited by the fact that the complaint in that case alleged such a public threat. In California Motor, the complaint alleged that certain incumbent trucking companies had set up a trust fund to finance opposition to their would-be competitors’ applications for truck operating rights, informed their would-be competitors that they intended to oppose “every application” “with or without probable cause and regardless of the merits,” and then made a slew of adverse filings, seemingly in accord with that threat. 404 U.S. at 518, 92 S.Ct. 609 (Stewart, J., concurring). Faced with that alleged abuse of the governmental process, California Motor reasoned that the right of petition under the First Amendment does not extend to the use of that right to deprive would-be competitors of their own right of petition to secure a right to enter the market and thereby take on the monopolist. Id. at 513-15, 92 S.Ct. 609 (majority opinion). The Court drew that fairly uncontroversial proposition from Associated Press v. United States, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945), which held that the Associated Press’s exclusive membership policies could still incur antitrust liability because the freedom to publish protected by the First Amendment does not extend to a “freedom to combine to keep others from publishing.” California Motor, 404 U.S. at 514, 92 S.Ct. 609 (quoting Associated Press, 326 U.S. at 20, 65 S.Ct. 1416). And, it is not clear to me that the Court, in relying on that logic, was suggesting that a campaign of harassing litigation aimed at destroying a would-be market entrant’s effort to petition for a license to operate—by making it too costly to pursue—is any less a sham just because no public threat of baseless filings is made. Nor is it clear to me that PREI requires that we limit California Motor’s reach to cases involving such threats. After all, PREI did not involve an attempt by an incumbent market actor to destroy a rival’s right to petition for a license to compete for a share of the incumbent’s market. Rather, in PREI, various movie studios filed a copyright infringement action against hotel operators who rented videodiscs of the studios’ movies to hotel guests and sought to develop a market for the viewing of the videos at other hotels. 508 U.S. at 51-52, 113 S.Ct. 1920. The hotel operators then counterclaimed that the studios’ suit was a sham because that claim for copyright protection, even though potentially meritorious, “cloaked” the studios’ effort to monopolize and restrain trade in video entertainment services at hotels. Id. at 52, 113 S.Ct. 1920. PREI thus did not face an alleged clash of petition rights remotely like in California Motor. PREI confronted only the stark contention that challenged petitioning activity is a sham for anticompetitive conduct if one market participant petitions to secure its legal right in order to maintain an economic advantage over a competitor (in that case by vindicating the right not to have its intellectual property infringed) by filing a non-frivolous suit. In PREI, the Court quite understandably reasoned that an anti-competitive motive in seeking legal relief is not in and of itself enough to make the request for relief an abuse of the right of petition. Id. at 59, 113 S.Ct. 1920. Such reasoning flows quite naturally from the logic underlying Noerr-Pennington immunity, which protects the First Amendment rights of all market actors to seek competitive advantage through the nonfrivolous assertion of legal rights that, if vindicated, would prove to be economically beneficial. Thus, in my view, PREI does not necessarily compel the conclusion that, in a pattern case more akin to California Motor, each filing in a series must be baseless to make the petitioning activity a sham. The antitrust violation—if it exists—in a pattern case of that kind inheres in the monopolist’s use of the petitioning process to make the costs of the rival’s petitioning activity so high that the rival cannot secure the legal relief that would enable it actually to become a competitor. And, for that reason, there is no claim in such a case, as there was in PREI, that the antitrust violation inheres merely in the monopolist’s desire to disadvantage the competitor by actually winning legal relief. Simply put, while there is no question after PREI that a monopolist may use its petitioning right to seek to win, I have my doubts about whether PREI also means that a monopolist may use that same right to ensure—by seeking to deprive a rival of its own petitioning right—that the monopolist cannot lose. Of course, in the abstract, I suppose that a monopolist could use even a single filing in this concerning manner. And, I acknowledge that PREI’s “objectively baseless” requirement would bar holding the monopolist liable for that filing, if it is not frivolous. But, even so, California Motor suggests that, for a monopolist to be effective in this regard, it will need to file multiple petitions, as opposed to a single one. Thus, the fact that PREI imposed an “objectively baseless” requirement in a case involving a single copyright infringement claim does not suggest to me that this same requirement necessarily applies to the kind of seemingly abusive serial filing that I have just described. Here, however, PRTC does not have the kind of direct evidence of OneLink’s attempt to destroy PRTC’s right to petition for a license to compete that the California Motor plaintiffs had in consequence of the public threat that the incumbent trucking companies had allegedly made. Nor does PRTC identify other comparable evidence. Instead, PRTC relies on circumstantial evidence from which, PRTC alleges, a jury could permissibly infer that OneLink filed its underlying petitions without regard to merit. PRTC points to OneLink’s poor win-loss record in the underlying proceedings and the fact that (in PRTC’s estimation) the relief sought was, in any event, unlikely to be of much benefit. But, PRTC concedes that each filing had some merit, and it is difficult to deny the value of the legal relief sought where, as is alleged here, a market incumbent seeks procedural rights to challenge a putative competitor’s application for an operating license and injunctive relief against that would-be competitor’s construction and funding of rival services. The only other evidence that PRTC asks us to consider is that OneLink abandoned its “efforts to intervene and challenge PRTC’s license” once its adversary obtained the license, the licensing board’s observations concerning OneLink’s litigiousness, and the possibility that OneLink financed half of another market incumbent’s lawsuit seeking to enjoin PRTC from developing the infrastructure to enter their market. But, no circuit has actually permitted a suit to go forward in which the underlying petitions were not baseless and there was no clear and convincing evidence that an alleged monopolist sought to “use the governmental process... as an anti-competitive weapon.” City of Columbia v. Omni Outdoor Advert., Inc., 499 U.S. 365, 380, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). And for good reason, given the First Amendment interests at stake. Cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (“[Wjhere the New York Times ‘clear and convincing’ evidence requirement applies, the trial judge’s summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant.”); New York Times Co. v. Sullivan, 376 U.S. 254, 285-86, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (establishing a clear-and-convincing standard of proof for a public official’s libel claim, in light of the defendant’s First Amendment rights). For these reasons, I am convinced that if we were to let this suit proceed, we would be tilting the balance too far against OneLink’s right of petition. Accordingly, I join the Court’s opinion, which affirms the District Court’s grant of summary judgment but reserves for future cases a fuller accounting of whether and when a series of non-baseless petitions might constitute a sham within the meaning of the Noerr-Pennington doctrine. . The case concerns an alleged monopoly violation under both the Sherman Act, 15 U.S.C. § 2, and the Puerto Rico Anti-Monopoly Act, P.R. Laws Ann. tit. 10, § 260. Puerto Rico’s anti-monopolization provision corresponds with that of the Sherman Act, and the parties have not suggested that the provisions are interpreted differently.